UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| TERRY ALLEN<br>440 Williamstowne Court<br>Millersville, MD 21108<br><br>    Plaintiff,<br><br>v.<br><br>BALTIMORE COUNTY BOARD OF EDUCATION<br>1000 Hilltop Circle<br>Baltimore, MD 21250<br><u>Serve On</u>:<br>James R. Benjamin, Jr.<br>County Attorney<br>Historic Courthouse<br>400 Washington Avenue<br>Towson, MD 21204<br><br>    Defendant. | Case No. 1:21-cv-1006<br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Terry Allen ("Plaintiff" or "Allen"), by and through his attorneys Philip B. Zipin, Roy Lyford-Pike, and Zipin, Amster & Greenberg, LLC, hereby files this Complaint against the Defendant, Baltimore County Board of Education ("Defendant" or the "Board"), seeking damages stemming from unlawful discrimination in employment based on age in violation of (1) the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; and (2) the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T ("SG") § 20-601, *et seq*.; and in support states as follows:

**PARTIES**

1. Plaintiff is an adult male resident of the State of Maryland. Plaintiff was an employee of the Board until he was forced into involuntary retirement on or about August 31, 2020.

2. The Board is an arm of the Baltimore County local government. It is the agency that governs all the public primary and secondary education schools in located within Baltimore County, Maryland.

**JURISDICTION, VENUE, AND EXHAUSTION OF REMEDIES**

3. On or about December 17, 2020, Plaintiff filed a timely charge with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendant violated the ADEA (and, consequently, MFEPA) by discriminating against Plaintiff on the basis of his age. The EEOC cross-filed the charge with the Maryland Commission on Civil Rights.

4. More than sixty (60) days has passed since the filing of the charge.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1931, 1441(a), and 1446(a).

6. This Court has original Federal Question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising out of the Constitution and laws of the United States, *viz.*: the ADEA.

7. This Court has supplemental jurisdiction over Plaintiff's MFEPA claims under 28 U.S.C. § 1441(c) and/or the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

**FACTS COMMON TO ALL COUNTS**

8. Beginning on or about July 16, 2008, Plaintiff worked for approximately twelve (12) years as an instructor for the Marine Corps Junior Reserve Officer Training Corps ("MCJROTC") at Franklin High School, a public high school in Baltimore County, Maryland.

9. At the time of his forced retirement, on or about August 31, 2020, Allen was sixty-nine (69) years old.

10. Throughout his tenure at Franklin High School, Allen compiled a record of outstanding performance.

11. For the school years ending June 30, 2015 and June 30, 2016 (the last years for which Allen received formal evaluations), the Board gave Allen the highest possible performance scores.

12. For both years, Allen received an "Outstanding" rating for all thirteen individual categories and as his "Overall Instructor Rating."

13. Franklin High School Principal Patrick S. McCusker ("McCusker") was Allen's immediate supervisor during the relevant period. At all times relevant, McCusker was an authorized agent acting on behalf of the Board with respect to Allen and Allen's employment.

14. McCusker signed off on Allen's tremendous 2015 evaluation, and added "[Gunnery] Sergeant Allen not only is a credit to the MCJROTC Program, he is a credit to Franklin High School. A true professional."

15. Allen's 2016 appraisal was similarly glowing. McCusker signed off on that evaluation and repeated the statement quoted above.

16. On May 29, 2018, Master Gunnery Sergeant Ronald D. Allender ("Allender"), who worked with Allen in the MCJROTC program, wrote a glowing letter of recommendation for Allen. Allender expressed his appreciation for Allen's work in effusive terms: "Gunnery Sergeant Allen is one of the finest Marine Staff Noncommissioned Officers I have worked with in my 40 years in the Marine Corps . . . Allen is an exceptionally talented and capable instructor and teacher."

17. On November 9, 2018, McCusker sent an "Observation Report" to Allen thanking Allen for inviting him to the celebration of the birthday of the U.S. Marine Corps. In that report, McCusker commended Allen on his leadership and teaching skills as follows: "It was clear that you had spent significant time planning the event and preparing the cadets to participate. You are commended for stepping aside as the facilitator and giving them the opportunity to lead the ceremony as they read from the program and gave commands to their colleagues." McCusker further praised Allen for his work ethic: "One adage I reference frequently is, 'If it looks like an easy win, it's because you weren't there when it was being earned.'"

18. On February 9, 2019, McCusker wrote another "Observation Report" to Allen and said: "Whenever I had to walk through the gym hallway before school, I would hear your drill team practicing. It is a testimony to the relationships you build with students that you can motivate teenagers to come to the building hours before the school day begins to participate in practice . . . Keep up the great work."

19. On September 9, 2019, McCusker sent to Allen a handwritten note thanking him "for once again having our cadets participate in the annual parade." McCusker's praise and thanks continued: "I know they made a good impression on the superintendent when he met them in the staging area. Moreover, the color guard is always impressive and helps to portray a positive school image to all the community members along the parade route. Thank you for your support."

20. On May 19, 2020, McCusker wrote a further email to Allen with praise and thanks. McCusker's email began as follows: "Sir—What a great way to start my day! I was really pleased to see that you had a number of cadets attending the virtual class meeting mod 1 today." McCusker concluded his email with this further complementary observation: "There was a lot of evidence that you have established really strong rapport with all of the cadets. Keep up the great work."

21. Allen's work ethic and performance never dropped from the exemplary standard he set, which was fully and repeatedly acknowledged and appreciated by McCusker and others.

22. Beginning in 2019, despite Allen's superlative performance, the Board starting pressuring Allen to retire due to his age. Ultimately, and as will be further explained below, the Board told Allen to retire by August 31, 2020, or he would be terminated.

23. Having no real choice, Allen retired effective August 31, 2020.

24. McCusker made several comments to Allen that demonstrated McCusker's discriminatory ageist animus. For example, in July of 2019, McCusker asked Allen when he planned to retire. Allen was surprised by this comment given how well he had been performing. He responded that he felt very good about the job he was doing, and intended to work for another three years, as that would give him the necessary 20 years of service for computation of his pension and boost his retirement pay.

25. On November 5, 2019, U.S. Marine Corps. Lt. Col. Mark Johnson, a JROTC liaison, told Allen "You are up in age and you need to retire this year." McCusker was present for this conversation and told Allen that he concurred with Lt. Col. Johnson's assessment.

26. Notwithstanding this pressure from McCusker, Allen maintained his optimism that he could continue to work as planned. He was healthy and enthusiastic about his work.

27. On June 24, 2020, Allen learned of a text message exchange between McCusker and Allender, which was not intended for his eyes, not shared with him at the time, and further revealed McCusker's ageist discrimination against Allen. In this text, McCusker said that because Allen was "refusing to retire, he is a few hours away from being fired to make room for you [Allender] to return."

28. Allen was aware that if he were to be fired, he would lose his retirement.

29. To avoid losing his retirement benefits, Allen was forced to apply for retirement effective as of August 31, 2020.

30. The Board started to replace Allen with younger instructors before he retired and did in fact replace him with substantially younger individuals.

31. The Board hired Sergeant Major Kappan into the MCJROTC program in July of 2020, shortly before Allen's forced retirement. On information and belief, Kappan is 48 years old, more than 20 years younger than Allen.

32. The Board hired a second instructor, Master Sergeant Leeks, in September of 2020, the month after Allen was forced to retire. On information and belief, Leeks is in his 40s, more than 20 years younger than Allen.

33. When members of the community learned that Allen was leaving Franklin High School, there was an outpouring of support. A typical email was written on August 11, 2020 by Alvin and Joann Savage, parents of a third-year cadet in the MCJROTC program. Mr. and Mrs. Savage wrote: "As an incoming 9th grader, we knew [our son] would benefit from the program. Gunny Allen and the program did a fantastic job reinforcing the principles and values we strive to develop in our son such as honesty, integrity, citizenship, patriotism and community service." They added a further note of appreciation: "The most impressive aspect of Gunnery Sgt. Allen's tenure as instructor of the FHSMCJROTC is the influence he had on every student that walked into the classroom. If you were to ask his students, I'm sure everyone would tell you the same thing. Gunny was tough as nails when he had to be but had a genuine heart for every cadet that walked through his doors."

34. All of the harassment and adverse employment actions described above were discriminatory treatment based on Allen's age.

35. Any proposed business justification for the adverse actions described above is a pretext.

36. Allen's opportunities in the workplace were not equal to those of other employees, due to Allen's age.

37. Allen would not have retired but for McCusker's threat of terminating him from his employment based on his age, which would have cost Allen his retirement benefits.

38. The harassment Allen experienced because of his age and the threat of losing his retirement benefits was so intolerable that he had no choice but to involuntarily resign his employment and retire prematurely.

39. Allen has suffered monetary and other damages as a result of the Board's discriminatory and retaliatory practices.

## COUNT I
### ADEA – Unlawful Discrimination/Harassment Based on Age
### 29 U.S.C. § 621

40. Plaintiff reincorporates the foregoing paragraphs as if fully set forth herein.

41. While employed by Defendant, Plaintiff was subjected to discrimination and harassment based on his age which adversely affected the material terms, conditions, and/or privileges of his employment. As outlined above, the Board discriminated against Allen based on his age.

42. Defendant's discrimination culminated in the constructive discharge of Plaintiff from employment, whereby Defendant forced Plaintiff to retire or face termination and the loss of retirement benefits. Accordingly, Plaintiff involuntarily resigned and retired. Plaintiff would not have retired but for Defendant's discrimination and harassment of Plaintiff based on his age. As a

result, Plaintiff has suffered loss of income and/or other pecuniary losses, humiliation, emotional distress, and/or other non-economic damages.

43. Based upon the foregoing, Defendant engaged in discriminatory conduct with malice and/or reckless disregard for Plaintiff's federally-protected rights under the ADEA.

### COUNT II
### MFEPA – Unlawful Age Discrimination
### Maryland Code Ann., State Government Article, § 20-606, *et seq.*

44. Plaintiff reincorporates the foregoing paragraphs as if fully set forth herein.

45. Under the MFEPA, Maryland employers may not "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of the individual's . . . age." SG § 20-606(a)(1)(i).

46. If an employer violates this law, an individual may bring a private action for damages pursuant to SG § 20-1013.

47. Defendant was Plaintiff's "employer" and Plaintiff was Defendant's "employee" as the terms are defined under SG § 20-601.

48. As discussed above, Defendant, including its agents and employees, engaged in discriminatory conduct against Plaintiff on the basis of his age, including termination of Plaintiff's employment.

49. Defendant's discriminatory conduct affected tangible aspects of Plaintiff's compensation, terms, conditions, and/or privileges of employment, culminating in the termination of Plaintiff's employment.

50.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, emotional distress, and pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant the following relief:

a.     Enter a judgment in favor of Plaintiff and against Defendant for compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in an amount to be proven at trial.

b.     Enter a judgment in favor of Plaintiff and against Defendant for punitive damages in an amount to be proven at trial.

c.     Assess reasonable attorneys' fees, representation expenses (included experts), and costs of suit in favor of Plaintiff and against Defendant in an amount to be proven through a Petition for Attorneys' Fees at the conclusion of this litigation.

d.     Enter an injunction compelling Defendant to reinstate Plaintiff, and prohibiting Defendant from further discrimination and retaliation or, as an alternative to reinstatement, compelling Defendant to pay Plaintiff "front-pay" and awarding other appropriate equitable relief including "back pay."

e.     Grant Plaintiff such other and further relief as the nature of his cause may warrant.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Philip B. Zipin*
Philip B. Zipin, Bar Number: 03932

Roy Lyford-Pike, Bar Number 19836
Zipin, Amster & Greenberg, LLC
8757 Georgia Ave., Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
(240) 839-9142 (fax)
Email: pzipin@zagfirm.com
      rlpike@zagfirm.com

*Counsel for Plaintiff*
